# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| IN RE: ) | CHAPTER 7 |
| ) | |
| CARMEN P. CIVIELLO AND ) | CASE NO. 02-65172 |
| NANCY J. CIVIELLO, ) | |
| Debtors. ) | CONSOL. ADV. NO. 05-6020 |
| ) | |
| LELAND E. FROST, et al., ) | JUDGE RUSS KENDIG |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | **MEMORANDUM OF DECISION** |
| CARMEN P. CIVIELLO, ) | **(WRITTEN OPINION)** |
| Defendant. ) | |

This matter is before the court on the motion for partial summary judgment filed by Plaintiffs Leland E. Frost, Jackie S. Frost and Tracy Kolarovsky (hereafter "Plaintiffs").[1] Plaintiffs filed amended complaints against Defendant-Debtor Carmen Civiello (hereafter "Civiello" or "Defendant") alleging grounds for nondischargeability under 11 U.S.C. § 523(a)(2), (4) and (19). Defendant denied the allegations in the complaints and submitted a response to Plaintiffs' motion for partial summary judgment. Plaintiffs thereafter submitted a reply to Defendant's brief.

## JURISDICTION

The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(a) and the general order of reference entered in this district on July 16, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I). The following constitutes the court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

## PROCEDURAL AND FACTUAL HISTORY

Defendant filed a joint Chapter 7 petition on October 25, 2002, received a discharge on April 14, 2004, and the case was closed on April 19, 2004. On October 26, 2004, Debtor moved to reopen the case to add creditors who may have the right to assert claims against him. The court granted the motion and the case was reopened on November 2, 2004. Debtor then added several creditors who were given an opportunity to contest dischargeability. Plaintiffs Leland E. Frost and Jackie S. Frost filed a

---

[1] Tracy Kolarovsky is a plaintiff in adversary proceeding 05-6021. Pursuant to an order entered on 6/22/05, that adversary was consolidated with the present adversary.

complaint objecting to the discharge on February 21, 2005, as did Plaintiff Tracy Kolarovsky. The adversary complaints were consolidated, by order of the court, on June 22, 2005.

There is relatively no dispute on the facts of this adversary proceeding. Debtor was an insurance agent who solicited investments in Aquadyn Water Treatment Units. He would arrange sale of the units from customers like Plaintiffs and the units would be purchased from an entity known as Forward Marketing, which would in turn lease the units to Aquadyn Technologies, Inc. (hereafter "Aquadyn"). Each unit cost $16,000.00 and Defendant received a fifteen percent commission on each sale.

Plaintiffs contend that Defendant made representations to them about the nature of their investments, including the lack of risk, the security of the original investment, and the monetary return on the investment. Additionally, Plaintiffs allege that Defendant failed to disclose his interest in Aquadyn, including his commission on the sales.

Based on the representations made to them, Plaintiffs invested in the water treatment systems. The Frost Plaintiffs invested $336,000.00, representing their entire pension from American Electric Power ("AEP"). Plaintiff Kolarovsky invested $48,000.00. Plaintiffs lost their entire investments following the failure of Aquadyn.

Defendant and his actions became the subject of a review by the Ohio Division of Securities. In December 2003, the Division of Securities entered a cease and desist order and found that the sales of the units were sales of unregistered securities and Defendant had violated Ohio Revised Code Chapter 1707. The findings issued by the Division of Securities included the following:

> (15) Civiello, as described in Paragraphs (4) through (8), sold securities to Ohio residents, without having been licensed by the Division of Securities as a dealer, and therefore, in violation of R.C. 1707.44(A)(1);
>
> \* \* \* \* \*
>
> (17) The securities described in paragraphs (4) through (7) are not exempt under R.C. 1707.02 from the registration requirements of the Ohio Securities Act, not the subject matter of an exempt transaction under R.C. 1707.03, 1707.04 or 1707.34, not registered by description, coordination or qualification, and not the subject matter of a transaction that was registered by description, and, therefore, were sold in violation of R.C. 1707.44(C)(1).
>
> \* \* \* \* \*
>
> WHEREAS, based on the foregoing paragraphs, the Division finds that Civiello violated the provisions of Revised Code sections 1707.44(C)(1) and 1707.44(A)(1).

During the course of the Division of Securities' investigation, Defendant was served via certified mail with a Notice of Opportunity of Hearing and Division Order No. 03-204 and failed to request an adjudicatory hearing. The order contains appeal rights which were not exercised by Defendant. Although Defendant was found to have violated Ohio securities law, as set forth in the cease and desist order, the order does not contain any determination of liability for the violations.

## ARGUMENTS

Plaintiffs move for summary judgment on Count II of their complaint seeking to find the debt nondischargeable under 11 U.S.C. § 523(a)(19). According to Plaintiffs, the cease and desist order entered by the Division of Securities is a determination of a violation of state securities laws, thereby meeting the requirement in subsection (A). Plaintiffs posit that subsection (B) is satisfied because the violation cited in the order entitles them to damages, including a refund of their purchase price. Plaintiffs recognize that the cease and desist order did not include damages, but argue that entitlement to damages brings them under subsection (B)(i). If this were not the case, Plaintiffs contend that (B)(iii) would be superfluous.

As an alternative argument, Plaintiffs urge the court to find that relitigation of issues addressed by the order is barred under the doctrine of collateral estoppel. Plaintiffs claim that administrative orders have been found to be subject to preclusion by collateral estoppel when the administrative body acted in a judicial capacity, the findings of fact were based on investigation and hearing, and Defendant had a full and fair opportunity to protect his rights throughout the process. Plaintiffs contend that all four elements are present.

Defendant counters Plaintiffs' collateral estoppel argument, asserting that the administrative order was a result of an investigative, not judicial, function. According to Defendant, under Ohio law, collateral estoppel only applies to administrative decisions where the administrative body was acting in a judicial capacity. Defendant also claims that whether he had the requisite *scienter* is a factual question and therefore summary judgment is not appropriate.

## LAW AND ANALYSIS

### I.   Standard of review

The procedure for granting summary judgment is found in Federal Rule of Civil Procedure 56(c), made applicable to this proceeding through Federal Rule of Bankruptcy Procedure 7056, which provides in part:

> [t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c).

To succeed on a motion for summary judgment, the movant must demonstrate each of the elements of its claim. R.E. Cruise, Inc. v. Bruggeman, 508 F.2d 415, 416 (6th Cir. 1975). In considering a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party, Adickes v. S.H.Kress & Co., 398 U.S. 144, 158-59 (1970), and all reasonable inferences are to be drawn in favor of the non-moving party. Matsushita Elect. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 582 (1986). When "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," the court should grant a motion for summary judgment. Id. at 587.

## II. 11 U.S.C. § 523(a)(19)

Section 523(a)(19) is a relatively recent addition to the bankruptcy code, added as part of the Sarbanes-Oxley Act of 2002. According to legislative history, the purpose of section 523(a)(19) was to protect investors:

> Current bankruptcy law may permit such wrongdoers to discharge their obligations under court judgments or settlements based on securities fraud and other securities violations. This loophole in the law should be closed to help defrauded investors recoup their losses and to hold accountable those who violate securities laws after a government unit or private suit results in a judgment or settlement against the wrongdoer.

Smith v. Gibbons (In re Gibbons), 289 B.R. 588, 592 (S.D.N.Y. 2003) (citing Pub.L. No. 107-204, 116 Stat.745 (2002)); *see also* Fishbach v. Simon (In re Simon), 311 B.R. 641 (Bankr. S.D. Fla. 2004); Harvey v. Lewandowski (In re Lewandowski), 325 B.R. 700 (Bankr. M.D. Penn. 2005).

Pursuant to 11 U.S.C. § 523(a)(19), debts arising from proscribed securities transactions are not dischargeable. The section provides, in applicable part:

> (a) A discharge under 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt--
>
> (19) that--
>
> (A) is for--
>
> (i) the violation of any of the Federal securities laws (as that term is defined in section 3(a)(47) of the Securities Exchange Act of 1934), any of the State securities laws, or any regulation or order issued under such Federal or State securities laws; or

> > (ii) common law fraud, deceit, or manipulation in connection with the purchase or sale of any security; and
>
> (B) results, before, on or after the date on which the petition was filed, from--
>
> > (i) any judgment order, consent order, or decree entered in any Federal or State judicial or administrative proceeding;
> >
> > (ii) any settlement agreement entered by the debtor; or
> >
> > (iii) any court or administrative order for any damages, fine, penalty, citation, restitutionary payment, disgorgement payment, attorney fee, cost, or other payment owed by the debtor.

11 U.S.C. § 523(a)(19). By its terms, the statute encompasses both statutory securities violations and common law fraud in securities transactions. *See also* Gibbons, 289 B.R. at 592.

As *Collier's* explains, in order to be excepted from discharge, two conditions must be met:

> (1) The debt is for the violation of certain federal securities laws, state securities laws or regulations under the federal or state securities laws or is for "common law fraud, deceit, or manipulation in connection with the purchase or sale of any security"; and
>
> (2) The debt results from a judgment, order, consent order or decree in an [sic] federal or state judicial or administrative proceeding or any settlement agreement entered by the debtor or any court or administrative order for the payment of damages, a fine, penalty, citation, restitutionary payment, disgorgement payment, attorney fee cost or other payment owed by the debtor.

15 Lawrence P. King, Collier on Bankruptcy §523.24B (15th ed. 2006).

By the plain language of the statute, its coverage is broad, aligning with expressed legislative intent. Generous application is also supported by the courts: "[t]o the maximum intent possible, this provision should be applied to existing bankruptcies. The provision applies to all judgments and settlements arising from state and federal securities laws violations entered in the future regardless of when the case was filed." Gibbons, 289 B.R. at 593. This view is further reflected by the amendment contained in the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 which added language that allows the debt from the securities violation to arise "before, on or after the date on which

the petition was filed." 11 U.S.C. § 523(a)(19)(B).

It is Plaintiffs' position that the cease and desist order, which found Defendant violated Ohio Revised Code section 1707.44, satisfies these requirements, thereby making the debt nondischargeable. Defendant disagrees.

The cease and desist order clearly and unequivocally states that Defendant violated O.R.C. § 1707.44(A)(1):

> (15) Civiello, as described in Paragraphs (4) through (8), sold securities to Ohio residents, without having been licensed by the Division of Securities as a dealer, and therefore, in violation of R.C. 1707.44(A)(1).

Further, his act of selling unregistered securities was also found to violate an Ohio securities law:

> (17) The securities described in paragraphs (4) through (7) are not exempt under R.C. 1707.02 from the registration requirements of the Ohio Securities Act, not the subject matter of an exempt transaction under R.C. 1707.03, 1707.04 or 1707.34, not registered by description, coordination or qualification, and not the subject matter of a transaction that was registered by description, and, therefore, were sold in violation of R.C. 1707.44(C)(1).

The Ohio Department of Commerce's Division of Securities is empowered by the Ohio General Assembly to enforce the securities laws of Ohio Revised Code § 1707.01 et seq. *See* O.R.C. § 1707.23 et seq. Through its powers, the Division of Securities can conduct examinations and hearings, investigate matters, initiate proceedings to revoke the licenses of licensed securities dealer, initiate criminal proceedings, and issue cease and desist orders. Id. The Ohio Administrative Code provides that "[n]o rule or adjudication of the division shall result from an investigative hearing unless an opportunity for a hearing is afforded in accordance with sections 119.01 to 119.13 of the Revised Code." Ohio Admin. Code § 1301:6-3-23(E). Section 119 of the Ohio Revised Code sets forth the hearing requirements which must be met before an agency's adjudication is valid. Thus, if Defendant was provided due process in the investigation, the cease and desist order was a valid adjudication by the division in accordance with its powers and duties.

Defendant is not challenging the procedure utilized by the agency. Further, Defendant was provided notice, including an opportunity for hearing, as well as rights to appeal the determination. Therefore, the court concludes that the cease and desist order is a valid adjudication wrought by an administrative agency empowered to enforce Ohio securities law. Plaintiffs have thus satisfied the first element of a section 523(a)(19) action, proving that Defendant did violate Ohio securities law.

Next, Plaintiffs must show that the debt results from a qualifying order, judgment or decree in a federal or state judicial or administrative proceeding. Plaintiffs advance an interpretation that 11 U.S.C. § 523(a)(19)(B)(i) "should be understood to mean

judgments, orders, consent orders, and decrees, that do not contain an award of damages, fines, penalties, citations, restitutionary payments, disgorgement payments, attorney's fees, or costs: such as cease and desist orders." Conversely, Plaintiffs urge the court to find that 11 U.S.C. § 523(a)(19)(B)(iii) covers "orders containing an award of damages, fines, penalties, citations, restitutionary payments, disgorgement payments, attorney's fees, or costs."

A statute should be interpreted 'as a whole, giving effect to each word and making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous.' Cafarelli v. Yancy, 226 F.3d 492, 499 (6th Cir. 2000) (quoting Lake Cumberland Trust, Inc. v. EPA, 954 F.2d 1218, 1222 (6th Cir. 1992)). Using this as guidance, the court must conclude that the sections have different meanings.

Looking first at subsection (i), and considering the statute in its entirety, the following results: a section 727 discharge does not discharge an individual from any debt that arises from a violation of state or federal securities law and results from a judicial or administrative judgment order, consent order, or decree. The traditional nature of a judgment order, consent order or decree generally involves a final adjudication of a matter. Comparing it to subsection (iii), which references "any court or administrative order," a clear distinction can be seen in that subsection (iii) includes non-final orders. Distinguishing between a final entry and non-final order would give effect to both provisions.

Another easily recognized difference between the two provisions is subsection (iii) meticulously specifies a variety of different types of damages, including, but not limited to, punitive damages, costs and restitution. Following the final/non-final order interpretation, the specificity of subsection (iii) is consistent. Different types of damages can be set forth in a final entry. An order, however, would generally be narrower in scope or encompass a smaller aspect of litigation. Subsection (iii) indicates that neither the type of order nor the type of award are excluding factors. The result is that the primary focus is on the fact that the award generates from a securities violation and not the underlying nature of the order or award. Under this interpretation, the court finds that the cease and desist order falls under subsection (iii).

Finally, the court must determine if the debt "results from" the cease and desist order. As *Collier's* recognizes, when compared to section 523(a)(2), this requirement renders section 523(a)(19) narrower because it "includes the additional requirement that the debt not only arise from the violation of the securities laws but also be memorialized in some form of judicial or administrative determination or in a settlement agreement." Collier, § 523.24B, p. 523-131. The cease and desist order did not address any remedies or damages which would inure to the benefit of any victims of the violations. It did not address, order, reference or otherwise provide for any monetary compensation. Under Collier, since the cease and desist order does not memorialize the debt, it would not satisfy the second requirement.

In spite of the lack of memorialization, Plaintiffs argue that the finding that the securities laws were violated automatically entitles them to a refund of their entire investment pursuant to O.R.C. § 1707.43(A). That provision provides, in its entirety:

> (A) Subject to divisions (B) and (C) of this section, every sale or contract for sale made in violation of Chapter 1707. of the Revised Code, is voidable at the election of the purchaser. The person making such sale or contract for sale, and every person that has participated in or aided the seller in any way in making such sale or contract for sale, are jointly and severally liable to the purchaser, in an action at law in any court of competent jurisdiction, upon tender to the seller in person or in open court of the securities sold or of the contract made, for the full amount paid by the purchaser and for all taxable court costs, unless the court determines that the violation did not materially affect the protection contemplated by the violated provision.
>
> (B) No action for the recovery of the purchase price as provided for in this section, and no other action for any recovery based upon or arising out of a sale or contract for sale made in violation of Chapter 1707. of the Revised Code, shall be brought more than two years after the plaintiff knew, or had reason to know, of the facts by reason of which the actions of the person or director were unlawful, or more than five years from the date of such sale or contract for sale, whichever is the shorter period.
>
> (C) No purchaser is entitled to the benefit of this section who has failed to accept, within thirty days from the date of such offer, an offer in writing made after two weeks from the date of the sale or contract of sale, by the seller or by any person that has participated in or aided the seller in any way in making the sale or contract of sale, to take back the security in question and to refund the full amount paid by the purchaser.

The court agrees that the cease and desist order clearly found Defendant to be in violation of O.R.C. § 1707.44. Pursuant to O.R.C. § 1707.43(A), the violation does provide the basis for a remedy of the purchase price "unless the court determines that the violation did not materially affect the protection contemplated by the violated provision." The court must determine if Defendant is entitled to present a defense under this portion of section 1707.43(A) and whether Plaintiffs are entitled to a judgment.

The cease and desist order cites two violations: one under O.R.C. § 1707.44(A)(1) and one under O.R.C. § 1707.44(C)(1). The Ohio Supreme Court has found that a violation of O.R.C. § 1707.44(C)(1) "materially affects the protection contemplated" as a matter of law. *See* Emick v. Hawkins, 2004 WL 2913255 (Ohio App. 7 Dist. 2004) (quoting Pencheff v. Adams, 5 Ohio St.3d 153, syllabus (1983)). In its decision, the Ohio Supreme Court found that

> the purpose behind the violated provision . . . is to prevent

> those persons willing to market worthless or unnecessary
> risky securities from soliciting to the public without first
> subjecting themselves and their securities to reasonable
> licensing and registration requirements designed to protect
> the public from its own stupidity, gullibility and avaricious-
> ness . . . Any contrary determination would only serve to
> undermine the most fundamental purpose of the statute-
> protection of the public from unregistered securities.

Pencheff, 5 Ohio St.3d at 154 (citing Bronaugh v. R.&E. Dredging Co., 16 Ohio St.2d 35, 40)). Consequently, Defendant cannot successfully argue, as a defense, that the violations did not materially affect the protection contemplated by the violated provision.

O.R.C. § 1707.43(B) sets forth a statute of limitations for actions to recover the purchase price. Plaintiffs have the shorter of either two years from the date they knew that Defendant's actions were illegal or five years from the actual sale of the securities. Using the shorter time frame, the cease and desist order was entered on December 18, 2003. The Plaintiffs had until December 18, 2005 to file an action to recover the purchase price. Defendants filed this action on February 21, 2005, well within the two year time limitation, and it is timely filed.

Based on the above, and as a matter of law, Plaintiffs are entitled to recover the purchase price of the transactions at issue, as well as court costs. The court will issue a separate order setting forth the judgment in favor of Plaintiffs.

The award issued by the court results from the violation of the cease and desist order. As such, the court concludes that Plaintiffs have succeeded in proving the second element of a section 523(a)(19) nondischargeability claim.

## CONCLUSION

The Division of Securities of the Ohio Department of Commerce issued a cease and desist order finding that Defendant sold securities without the proper license and without registering the securities as required by law. The violations are of Ohio securities law, thereby satisfying 11 U.S.C. § 523(a)(19)(A). As a result of the violations, Plaintiffs are entitled to a judgment as a matter of law. The judgment "results from" Defendant's violation of the securities law identified in the cease and desist order, thereby satisfying the requirement of 11 U.S.C. § 523(a)(19)(B). Both prongs having been satisfied, the court finds that the debt owing Plaintiffs is nondischargeable.

An order in accordance with this opinion shall be entered forthwith.

/s/ Russ Kendig
---
Judge Russ Kendig
United States Bankruptcy Judge

AUG 15 2006

**Service List**

Anthony J. DeGirolamo
Day Ketterer, Ltd.
Millenium Centre, Suite 300
200 Market Ave., N.
Canton, OH 44701

Edwin H. Breyfogle
11 Lincoln Way W.
Lincoln Professional Building, #2B
Massillon, OH 44647